IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

|  |  |  |
|---|---|---|
| JOHN R. BEHRMANN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:16-cv-1228 |
| | ) | |
| | ) | |
| JOHN T. HOUK, II, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants Husch Blackwell LLP, Michael Goldstein, and Christie Kennett's ("the Husch Defendants") Renewed Motion to Dismiss the Second Amended Complaint; Defendant Robert H. Taggart, Jr.'s Renewed Motion to Dismiss the Second Amended Complaint; Defendants John T. Houk, II, Marian M. Houk, John T. Houk, III, Janet H. Ridgely, Julie L. Houk, Johnathan M. Gill, Dana Fenton, Todd Thibodeaux, Julia Weltmann Healey, the Congressional District Program, Inc., and Charity Admin, Inc.'s ("the Houk Defendants") Motion to Dismiss the Second Amended Complaint; and Defendant Robert Ben-Kori & Associates' Motion to Dismiss the Second Amended Complaint.

Plaintiffs John R. Berhmann and Nancy Behrmann ("Plaintiffs") are a married couple who gave over $1 million to

the National Heritage Foundation ("NHF") over several years for the purpose of charitable donations.  Plaintiffs allege that the Defendants in this case—through NHF—participated in an elaborate, slowly developing conspiracy involving mail fraud, wire fraud, and bank fraud, with the intent to cheat Plaintiffs out of their own money, as well as that of other NHF contributors whose rights to pursue claims against Defendants have been assigned to Plaintiffs.

NHF is a non-profit organization established by Defendant John T. Houk, II in 1994.  NHF's officers and board of directors include John T. Houk, II; his wife, Marian M. Houk; his son, John T. Houk, III; his daughter, Janet H. Ridgely; and his daughter-in-law, Julia L. Houk ("the Houk Family").  Additional officers and directors include Defendants Dana Fenton; Todd Thibodeaux; and Jonathan Gill.  NHF markets itself as a charity organization dedicated to charitable investment.  It functions as a charitable umbrella, allowing individual contributors to direct their charitable giving to charities of their choice.

Plaintiffs allege that the Houk Defendants, through NHF, developed charitable products that would induce contributions from donors into their scheme.  One of these products was known as the charitable split-dollar program, in which a donor would make a tax deductible contribution to a Donor Advised Fund ("DAF"), which was administered by the Houk Defendants.  DAFs

are funds or accounts owned and controlled by a sponsoring organization—here, NHF.  Donors to DAFs receive a dollar-for-dollar income tax deduction for their donation, and they give up control over the funds in exchange for that favorable tax benefit.  Under the charitable split-dollar program, the Houk Defendants would use part of an investor's donation to set up a charitable foundation, and part of the donation to pay life insurance premiums for variable life insurance policies.  When the policies paid out, the proceeds would be split between the donors and, according to Plaintiffs, the Houk Defendants and the co-Defendants.

In 1996, Plaintiffs decided to contribute money to NHF by using the charitable split-dollar program and created a charity foundation as a DAF.  They did so after consulting with their financial advisors, who had analyzed the tax consequences of such an arrangement.  Plaintiffs retained the Husch Defendants, who Plaintiffs claim conspired with the Houk Defendants to violate the law, to prepare legal documents pertaining to this arrangement.  Plaintiffs allege that the Houk Defendants promised that the Plaintiffs could direct the assets in their DAF to a different charity of their choice if they ever became dissatisfied with the Houk Defendants' handling of those funds. According to the Plaintiffs, the Houk Defendants and their co-

Defendants' concealment of their criminal activity prevented them from engaging in these transfers.

Plaintiffs claim to have donated over $1 million between the time they established their DAF and January 2009, when NHF filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Eastern District of Virginia ("the Bankruptcy Action"). NHF's bankruptcy filing was precipitated by a September 2008 jury verdict against NHF, in which $6.2 million in damages was awarded against the organization.

Plaintiffs participated in the Bankruptcy Action by filing a claim in which they asserted an interest in a custodial account held by NHF in the amount of approximately $650,000. In the bankruptcy proceedings, Plaintiffs argued that, as NHF donors, they were creditors entitled to file claims in the Bankruptcy Action, and that NHF's bankruptcy filing was a sham. In October 2009, NHF filed its Fourth Amended Reorganization Plan ("the Plan"), which provided that NHF's donors were not creditors and only had advisory rights as to the use of the donated funds. The Bankruptcy Court confirmed the Plan on October 16, 2009, finding that the Plan was proposed in good faith and with a legitimate and honest purpose.

In January 2010, Plaintiffs sued their financial advisors, who had advised Plaintiffs on the split-dollar program in 1996,

in California state court, alleging that there had been undisclosed conflicts of interests between their advisors and NHF. As damages, Plaintiffs claimed the $650,000 present in the DAF when NHF filed for bankruptcy. The case in California state court concluded with the court granting a motion for nonsuit after a 10-day trial. In July 2013, the California Court of Appeal affirmed the trial court's ruling, holding that Plaintiffs failed to establish a causal link between NHF's bankruptcy and Plaintiffs' purported losses.

In June 2012, Plaintiffs filed the instant case in the United States District Court for the Central District of California ("the Central District of California"). The case was then stayed pending the outcome of multiple appeals in the Bankruptcy Action. In April 2013, Plaintiffs filed a renewed motion in the Bankruptcy Court seeking leave to pursue claims against the Houk Defendants in the Central District of California. The Bankruptcy Court denied that motion, and, on May 5, 2014, the United States District Court for the Eastern District of Virginia (Judge Brinkema) affirmed. Judge Brinkema found that a donor to a DAF has no right, title, or interest in the DAF's assets following a donation to the DAF. The Court reasoned that when Plaintiffs accepted the special tax advantages derived from contributing to the DAF at NHF, they gave up their right to make the claims that they intended to

make against the Houk Defendants.  The Court held that, as a result, Plaintiffs could have no claim against NHF or the Houk Family for any alleged confiscation of those assets, before or after NHF filed for bankruptcy.  On April 8, 2015, the Fourth Circuit affirmed.  On September 4, 2015, Plaintiffs filed a petition for writ of certiorari, which was denied.

On December 8, 2015, the Central District of California lifted its stay.  Plaintiffs filed their Second Amended Complaint on January 22, 2016.  The case was transferred to this Court on September 29, 2016.  In their 14-count Second Amended Complaint—the operative complaint—Plaintiffs allege that they were induced to donate to NHF under the pretense that their contributions would be used for charity, and that the Defendants misappropriated the funds instead.  They claim that through a number of schemes, the Houk Defendants used those funds for their personal gain, and that they operated a criminal enterprise along with the rest of the Defendants in this action to make a profit of over $170 million.

The Plaintiffs raise causes of action for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 (Counts 1 through 4); violations of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. (Count 5); violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. (Count

6); civil conspiracy to commit fraud (Count 7); negligent misrepresentation (Count 8); breach of fiduciary duty (Count 9); professional negligence (Count 10); imposition of constructive trust (Count 11); rescission (Count 2); violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, PA. Stat. §§ 201-1 *et seq.* (Count 13); and violations of Missouri's Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq.* (Count 14). The above-named Defendants now move to dismiss the Second Amended Complaint.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). To survive a motion dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation and quotations omitted). Complaints are required to allege "a *plausible* claim for relief" instead of merely stating facts that leave open "the *possibility* that a plaintiff might later establish some set of undisclosed facts to support recovery."

McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.,
780 F.3d 582, 587 (4th Cir. 2015) (emphasis in original).

Plaintiffs' claims against all Defendants are barred by
collateral estoppel because Plaintiffs have already litigated
the theory on which their claims are based in the California
state court case and in the Bankruptcy Action.  Collateral
estoppel "bars successive litigation of an issue of fact or law
actually litigated and resolved in a valid court determination
essential to the prior judgment, even if the issue recurs in the
context of a different claim." Taylor v. Sturgell, 553 U.S.
880, 892 (2008) (internal citation and quotations omitted).

Under both California and federal law,[1] collateral estoppel
applies where (1) the issue necessarily decided at the previous
proceeding is identical to the one which is sought to be
relitigated; (2) the first proceeding ended with a final
judgment on the merits; and (3) the party against whom
collateral estoppel is asserted was a party or in privity with a
party at the first proceeding. Hydranautics v. FilmTec Corp.,
204 F.3d 880, 885 (9th Cir. 2000); see also In re Microsoft
Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004).  All
elements are met here.

---

[1] The preclusive effect of the California judgment is determined by California
law.  See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81
(1984).  The preclusive effect of the federal court's judgment is determined
by federal law.  See Taylor, 553 U.S. at 891.

First, Plaintiffs' claims turn on the same theory of causation that they litigated and lost in California state court.  In their Second Amended Complaint, Plaintiffs allege that their injury was caused by their decision to donate money to NHF in 1996, which they allege was caused by misrepresentations by the Defendants.  The California trial court, however, held that Plaintiffs' alleged injuries were not caused by the split-dollar agreement or any representations made in connection with that agreement.  In fact, the trial court found that the split-dollar program performed as promised by giving Plaintiffs a tax benefit.  Moreover, the trial court found that there was no evidence of a criminal conspiracy.

Furthermore, in the Bankruptcy Action, this Court already held that Plaintiff's allegations that they were harmed by the loss of the DAF's assets were frivolous because Plaintiffs had no right, title, or interest in the DAF's assets following their donation.  In her May 5, 2014 decision, affirming various Bankruptcy Court orders, Judge Brinkema explained that when Plaintiffs accepted the special tax advantages derived from contributing to a DAF, they gave up their right to make any claims based on any alleged confiscation of the DAF's assets, either before or after NHF filed for bankruptcy.  In other words, because Plaintiffs had no right or interest in the DAF's assets following their donation, Plaintiffs cannot now allege

they were injured by the loss of those assets once they were donated.  In the instant case, Plaintiffs continue to allege injuries based on the "loss" of the money which was in the DAF at the time of NHF's bankruptcy, an allegation that this Court already rejected.

Plaintiffs argue that collateral estoppel does not apply because this Court's decision in the Bankruptcy Action only addressed claims against the Defendants for conduct that occurred during the bankruptcy proceeding, as opposed to before the bankruptcy proceeding.  However, this Court clearly stated that, because Plaintiffs had no legal claim to ownership in the assets in the DAF, Plaintiffs could have no claim for any alleged confiscation of those assets, either before or after NHF filed for bankruptcy.  Thus, Plaintiffs are estopped from alleging the claims alleged in the Second Amended Complaint.

Second, both the proceedings in the California state court and in the Bankruptcy Court ended with a final judgment on the merits.  The California Court of Appeal affirmed the trial court's decision.  The time for Plaintiffs to file a petition for review to the California Supreme Court has since expired, and the California decisions are now final.  See Cal. R. Ct. 8.500(e).  Additionally, Judge Brinkema's decision affirming the various Bankruptcy Court orders was affirmed on appeal "for the reasons stated by the district court," and it is now final.  See

Miller v. Nat'l Heritage Found., Inc., 599 F. App'x. 107 (4th Cir), cert. denied sub nom. Behrmann v. Nat'l Heritage Found., Inc., 136 S. Ct. 417 (2015).

Finally, collateral estoppel applies because Plaintiffs were parties to the prior actions and are the parties against whom collateral estoppel is asserted in this action. See In re Microsoft Corp. Antitrust Litig., 355 F.3d at 326. Because the estoppel need not be mutual, it is unnecessary that the earlier and later proceedings involve the identical parties or their privies. Vandenberg v. Super. Ct., 21 Cal. 4th 815, 828 (1999). Only the party against whom the doctrine is invoked—here, the Plaintiffs—must be bound by the prior proceeding. Id. Thus, the Defendants in this case need not have been a party, or in privity with a party, to the prior actions for collateral estoppel to apply. For these reasons, Plaintiff's claims are barred by the doctrine of collateral estoppel.

Because Plaintiffs' claims are barred by collateral estoppel, Plaintiffs fail to state a claim on which relief can be granted. Thus, all claims against the Defendants must be dismissed. An appropriate order shall issue.

12

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
January ___, 2017